# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| B.A.C.A. INTERNATIONAL, INC., <br><br> *Plaintiff*, <br> v. <br><br> CHRIS CLARKE, *et al.*, <br><br> *Defendants*. | **ORDER REQUESTING SUPPLEMENTAL BRIEFING ON MOTION FOR DEFAULT JUDGMENT** <br><br> Case No. 2:15-cv-00617 <br><br> District Judge Jill N. Parrish |

On November 9, 2015, the clerk of the court issued a certificate of default as to Defendant Jacob Huggard. Over two years later, Plaintiff B.A.C.A. International, Inc. moved for a default judgment against Mr. Huggard. B.A.C.A. contends that it is entitled to default judgment on its fifth claim to relief: unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). The court, hwoever, is concerned that the facts alleged in the complaint fail to establish of a violation of § 1125(a)(1)(A).

Section 1125(a)(1) imposes liability on "[a]ny person who, on or in connection with any good . . . , uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods . . . by another person."

B.A.C.A. contends that Mr. Huggard violated this section because "the patch [he sold] was not merely similar to an authorized B.A.C.A. back patch, but indistinguishable from an authorized B.A.C.A. back patch." And according to B.A.C.A., once the patch was sold and

"affixed to a biker's jacket or vest, the patch would have necessarily conveyed the message to all who saw it that the wearer was a B.A.C.A. member and, therefore, a safe, trustworthy person without regard for the wearer's actual character."

It does not appear that B.A.C.A. argues that Mr. Huggard's sale of the B.A.C.A. patch was likely to cause confusion as to "the affiliation, connection, or association" of Mr. Huggard with B.A.C.A. or some other person. *See* § 1125(a)(1)(A). Specifically, B.A.C.A. does not argue that the public would be confused as to Mr. Huggard's affiliation with B.A.C.A. So B.A.C.A. seems to impliedly argue that Mr. Huggard's sale of the B.A.C.A. patch was likely to confuse the public as to the "origin, sponsorship, or approval" of the patch.

But "trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987); *see also Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his."); *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 593 (5th Cir. 1993) (en banc) (holding that retail drug store did not violate § 1125(a)(1) because, among other reasons, sale of manufacturer's hair-care products "cannot cause confusion as to manufacture or sponsorship because the goods were manufactured and labeled [by manufacturer]"). This rule exists because trademark law is "designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold." *NEC*, 810 F.2d at 1509 (citing *Prestonettes*, 264 U.S. at 368–69).

Here, Mr. Huggard sold a genuine B.A.C.A. patch without B.A.C.A.'s consent. Mr. Huggard did not sell a counterfeit B.A.C.A. patch—an act that would certainly cause confusion

as to the origin of the patch. The court is concerned that merely selling the B.A.C.A. patch does not constitute a violation of § 1125(a)(1). Specifically, the court is concerned that B.A.C.A. focuses on whether the public would mistake someone wearing the B.A.C.A. patch as a member of B.A.C.A., as opposed to whether the public would be confused as to the "origin, sponsorship, or approval" of the patch itself.

Accordingly, B.A.C.A. is hereby ORDERED to submit supplemental briefing on the issue of whether the factual allegations in the complaint establish that Mr. Huggard violated § 1125(a)(1)(A). B.A.C.A. must identify the specific statutory language of § 1125(a)(1)(A) upon which it relies. B.A.C.A. shall respond accordingly on or before Friday, July 6, 2018. B.A.C.A.'s supplemental brief shall not exceed ten pages. Alternatively, B.A.C.A. may withdraw its motion for entry of default judgment and move for default judgment against Mr. Huggard on one of its sixteen other claims for relief.

Signed June 26, 2018

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge